**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CHARLES DAVIS,

        Plaintiff,

vs.

DWIGHT NEVEN, *et al.*,

        Defendants.

Case No. 2:13-cv-01380-APG-PAL

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Charles Davis's Complaint alleges that he has suffered two wrongs, both in violation of the Fifth and Fourteenth Amendments: first, that he was improperly classified as a sex offender, and second, that because of the improper classification he was denied good-time credits applied to his sentence. (Dkt. # 8.)  Defendants Dwight Neven and Jennifer Nash moved for summary judgment. (Dkt. # 19.)  Plaintiff has not opposed that motion, and the time to do so has long passed.  Although Local Rule 7-2(d) permits me to grant the motion because it is unopposed, I have reviewed the motion on its merits.  Good cause exists to grant the motion.

## I.     LEGAL STANDARDS

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted).  In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1    "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

2    come forward with evidence which would entitle it to a directed verdict if the evidence went

3    uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

4    the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

5    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

6    omitted).   In contrast, when the nonmoving party bears the burden of proving the claim or

7    defense, the moving party can meet its burden in two ways: (1) by presenting evidence to

8    negate an essential element of the nonmoving party's case; or (2) by demonstrating the

9    nonmoving party failed to make a showing sufficient to establish an element essential to that

10   party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v.*

11   *Cartrett*, 477 U.S. 317, 323-25 (1986).

12          If the moving party satisfies its initial burden, the burden shifts to the opposing party to

13   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

14   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

15          The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be

16   subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

17   The Clause provides, among other things, protection against multiple punishments for the same

18   offense. *Ohio v. Johnson*, 467 U.S. 493, 498 (1984).

19          The Due Process Clause of the Fourteenth Amendment provides that the State shall not

20   "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

21   XIV, § 1.  Generally, the liberty enjoyed by prisoners is limited to "freedom from restraint which,

22   while not exceeding the sentence in such an unexpected manner as to give rise to protection by

23   the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship

24   on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472,

25   484 (1995).

26          The classification of an inmate as a sex offender constitutes just such an atypical and

27   significant hardship, so before any such classification is made, the inmate is entitled to

28   procedural due process protections. *Neal v. Shimoda*, 131 F.3d 818, 829-30 (9th Cir. 1997).  In

1   *Shimoda*, the classification of the inmates as sex offenders was paired with mandatory

2   completion of a treatment program upon which parole eligibility relied. *Id.*  The application of the

3   sex offender label coupled with mandatory treatment as a precondition to parole led to the Ninth

4   Circuit's conclusion that the deprivations at stake were so serious as to constitute a liberty

5   interest. *Id.* ).

6   ## II.   ANALYSIS

7   Plaintiff was convicted in Eighth Judicial District Court case number C277482 of one

8   count of Pandering and one count of Pandering: Furnishing Transportation.  Both counts carried

9   identical sentences of 19-48 months, to run concurrently.  Plaintiff was admitted to High Desert

10  State Prison (HDSP) on February 9, 2012, and underwent the intake and initial classification

11  process for all new commits.  This process involves creating a prison identity for the inmate,

12  which includes assignment of a custody level, creation of an Institutional File (I-File), and

13  calculation of parole eligibility and sentence expiration dates.

14  ### i.   *Medium-custody classification*

15  Plaintiff was classified as a medium custody inmate, ineligible for minimum custody.  This

16  classification was made by Nevada Department of Corrections (NDOC) officials based on the

17  age of Plaintiff's victim.  Consideration of the victim's age is a discretionary exclusion from

18  minimum custody pursuant to NDOC Administrative Regulation 521.   This classification

19  determination affected only the physical location where Plaintiff could be housed while

20  incarcerated.  Specifically, Plaintiff was excluded from being housed at one of the NDOC's

21  conservation camps.  Plaintiff contends that this housing determination effectively classified him

22  as a sex offender in violation of the Fifth and Fourteenth Amendments.

23  In their motion, Defendants offer evidence demonstrating that Plaintiff's medium-custody

24  classification did not bear on, impair, hinder, limit, or otherwise affect his parole eligibility date or

25  sentence expiration date.  Unlike in *Shimoda*, where the plaintiff's liberty hinged upon his

26  completion of mandatory sex offender programming, in the present case Plaintiff's liberty—his

27  opportunity to be released from prison—was never at risk as a consequence of being excluded

28  from minimum custody.  Plaintiff has not offered any evidence to the contrary, therefore failing to

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1    establish the existence of a genuine issue of material fact as to the effect of his classification.

2    Plaintiff's classification as a medium custody inmate was not in violation of the Fourteenth

3    Amendment's guarantee of due process.

4    Defendants also have offered evidence demonstrating that the medium-custody

5    classification did not render Plaintiff a sex offender under Nevada law, as it did not constitute a

6    conviction under NRS 179D.097 and carried no registration requirements.   Plaintiff has not

7    presented any evidence to the contrary, therefore failing to establish the existence of a genuine

8    issue of material fact as to the effect of the medium-custody classification.   The medium-custody

9    classification did not constitute a second punishment for Plaintiff's earlier offenses, which would

10   be prohibited by the Fifth Amendment.

### ii.     SOR Packet

12   Plaintiff arrived at HDSP with a Sex Offender Registration (SOR) Packet filled out and in

13   his possession.   NDOC Administrative Regulation 560.02 requires employees working in the

14   intake units to place copies of "all documents" into the inmate's Institutional File (I-File) at the

15   time of its initial development.   Thus, Plaintiff's SOR Packet was placed in his I-File.   Plaintiff

16   contends that this placement of the SOR Packet in his I-File effectively classified him as a sex

17   offender in violation of the Fifth and Fourteenth Amendments.

18   NDOC Administrative Regulation 560.02 requires that all paperwork in an inmate's

19   possession when he arrives must be included in his I-File, and prohibits removal of those

20   documents from the I-File.   Plaintiff arrived at HDSP with the completed SOR Packet in his

21   possession, and Plaintiff has failed to provide any evidence to the contrary.   Plaintiff has

22   therefore failed to demonstrate the existence of a genuine issue of material fact as to whether

23   Defendants categorized or classified him as a sex offender by requiring him to fill out the SOR

24   Packet.   The inclusion of the SOR Packet in Plaintiff's I-File does not constitute a violation of

25   either the Fourteenth or Fifth Amendments.

### iii.     Temporary denial of good-time credits

27   Upon Plaintiff's arrival at HDSP, the information for Plaintiff's first count of Pandering was

28   erroneously entered as Pandering a Child, which is a type of conviction that is exempt from

**Attorney General's Office**
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1   receiving credits toward the minimum sentence under Nevada law. NRS 209.4465(8)(a).  Based

2   on the error in inputting the correct name of the conviction, Plaintiff was temporarily denied

3   good-time credits towards the minimum term for his sentence on that conviction.  That error was

4   corrected on September 27, 2012, when Associate Warden Jennifer Nash revised the name of

5   the count and instructed the NDOC's Offender Management Division to apply good-time credits

6   to the minimum term for that count retroactively.  Thereafter, Plaintiff received good-time credits

7   both retroactively and prospectively on the minimum term for his sentence for Pandering.

8   Plaintiff has offered no evidence to the contrary that would point to the existence of a genuine

9   issue of material fact.  Plaintiff suffered no lasting harm from this data entry error, and it did not

10  violate his Fourteenth or Fifth Amendment rights because he was not deprived of any liberty

11  interest, nor was he subjected to multiple punishments for the same offenses.

12  **III.     CONCLUSION**

13  **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #

14  19) is **GRANTED.**

15  Dated this 9th day of September, 2014.

16

17

18

19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28